*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMMAL RAJUE JACKSON,

        Defendant-Appellant.

UNPUBLISHED
November 14, 2019

No. 345524
Wayne Circuit Court
LC No. 15-009802-01-FC

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, and felonious assault, MCL 750.82. Defendant was sentenced as a third habitual offender, MCL 769.11, to 12 to 20 years' imprisonment for the armed robbery conviction, 10 to 20 years' imprisonment for the first-degree home invasion conviction, 4 years and 6 months to 10 years' imprisonment for the AWIGBH conviction, and two to four years' imprisonment for the felonious assault conviction. Defendant argues that the prosecution engaged in misconduct by improperly bolstering and commenting on the credibility of the victim, Leslie Chapman, and that defense counsel provided ineffective assistance of counsel by failing to object to the prosecutor's improper comments. Defendant also argues that he could not have been convicted of both AWIGBH and felonious assault because the convictions were mutually exclusive, and that there was insufficient evidence to sustain his first-degree home invasion conviction. Defendant lastly asserts that his trial counsel was ineffective for failing to object to the trial court's jury instruction on first-degree home invasion or otherwise request a special jury instruction on the offense. We affirm.

## I. FACTUAL BACKGROUND

In July 2015, Chapman asked defendant to watch her house while Chapman went out of town to visit her pregnant daughter. Chapman gave defendant a key to her house. When Chapman returned, she asked defendant to return the house key, but defendant did not return the key. On August 8, 2015, between 2:30 a.m. and 3:00 a.m., Chapman was in her home sleeping

-1-

in her bedroom with Quentin Smith when Smith awoke to a sharp pain in his left cheek and saw defendant standing over him with an aluminum baseball bat. The sound of the strike woke Chapman. Defendant told Smith to collect his things and leave, otherwise defendant would kill Smith. As Smith was leaving, defendant demanded that Smith turn over his wallet. Smith gave defendant the wallet, which contained $15, and left.

Defendant and Chapman argued in the living room about Smith being at Chapman's house. Angered, defendant held the baseball bat up to Chapman's head and said that "he ought to hit [Chapman] with the bat." Thinking that defendant would not follow through with the threat, Chapman told defendant to hit her. Defendant, using the baseball bat, struck the left side of Chapman's head with "a lot" of force, causing Chapman to stumble. Defendant then rummaged through some of Chapman's belongings before ultimately leaving the premises.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues that the prosecutor engaged in misconduct by improperly bolstering and commenting on Chapman's credibility. Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's remarks. We disagree.

To preserve a claim of prosecutorial misconduct, a defendant must timely and specifically object, "except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). A defendant must also request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not timely and specifically object to the prosecutor's allegedly improper remarks during her closing argument, nor did defendant request a curative instruction. Therefore, this issue is unpreserved.

Ordinarily, a claim of prosecutorial misconduct is reviewed de novo to determine if a defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). However, when a claim of prosecutorial misconduct is unpreserved, "appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is only warranted if the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceedings. *Id*. at 763-764.

To properly preserve an ineffective assistance of counsel claim, a defendant must move for a new trial or a *Ginther*[1] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant did not move for a new trial or a *Ginther* hearing, and

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

therefore, this issue is unpreserved. The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Issues of prosecutorial misconduct are decided on a case-by-case basis, with the prosecutor's remarks reviewed in the context within which they were made. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). Generally, "the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness'[s] truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455. "The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (quotation marks and citation omitted).

Defendant argues that the prosecutor made three improper remarks during her closing argument concerning Chapman's credibility. Defendant asserts that the prosecutor told the jury that Chapman had no reason to lie, that she told the truth, and that she had no reason to dislike defendant. In context, the prosecutor had just finished summarizing Chapman's testimony wherein Chapman identified defendant as the perpetrator of the home invasion and assaults. The prosecutor noted:

> [Chapman] has no reason to lie to you, ladies and gentlemen, about something like this.
>
> Did she seem to have a good memory? She remembered the basics of what happened to her. She remembered who the person was, and how this happened to her.
>
> Did she seem to make an honest effort to tell the truth? Did she seem to evade questions or argue with the lawyers? She had no reason to argue with the lawyers and she did not. She told the truth. She told you what she remembered.

During the prosecutor's rebuttal argument, responding to defense counsel's argument that Chapman did not actually know the identity of the person who committed the home invasion and assaults, the prosecutor stated:

> As far as identification she's told you several times that this is him. She has no reason to tell you that it's somebody else. If it was somebody else who went in there and told you—if somebody else who went in there and did this to her she's scared she's frighten [sic] for her life. She's scared that this person would be coming back. Wouldn't she want that person to be the person who gets

in trouble for this? Not some person that she knew. She has no reason to dislike or get [defendant] in trouble except for the fact that he was the one who did this to her.

Considering the prosecutor's statements in context, the remarks were proper comments about the evidence presented at trial and Chapman's testimony. The prosecutor was asserting that Chapman's testimony was credible, and during the prosecution's rebuttal argument, the prosecutor was specifically addressing defense counsel's closing argument to the contrary. Defendant's theory of the case was that defendant was not the individual who committed the crimes, and that Chapman was trying to frame defendant for the crimes. To combat defendant's arguments, the prosecution asserted that Chapman had no reason to lie, that she told the truth, and that she had no reason to frame defendant. These remarks did not suggest that the prosecutor had some special knowledge concerning Chapman's truthfulness, and were proper under the circumstances. *Mullins*, 322 Mich App at 172.

Moreover, even assuming for the sake of argument that the prosecution's remarks concerning Chapman's credibility were improper, the trial court instructed the jury that the "[l]awyers' statements and arguments are not evidence, but are only meant to help you understand [the] evidence and each side's legal theories." And, we have noted before that "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) (citation omitted). Accordingly, the jury was presumed to have not considered the prosecutor's remarks concerning Chapman's credibility as evidence.

Finally, we note defendant's argument that his counsel was ineffective for failing to object to the prosecutor's allegedly improper remarks during closing arguments. Having held that the prosecutor did not engage in misconduct during her closing argument, however, we cannot conclude that defense counsel was ineffective for failing to object to the prosecutor's remarks. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Defendant has not established ineffective assistance with respect to this issue.

## III. MUTUALLY EXCLUSIVE VERDICTS

Defendant next argues that his felonious assault conviction must be vacated because defendant's felonious assault conviction required a factual finding that defendant did not have intent to do great bodily harm less than murder, while the AWIGBH conviction required the opposite finding—that defendant did have intent to do great bodily harm less than murder. We disagree.

Defendant failed to raise this issue below, and it is therefore unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) ("For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."). Although this Court generally reviews questions regarding inconsistent verdicts de novo, *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012), "because defendant's issue is unpreserved, this Court reviews the issue for plain error affecting his substantial rights," *People v Perry*, 317 Mich App 589, 600; 895 NW2d 216 (2016). As stated previously, a finding of plain

error requires (1) an error to have occurred that was (2) clear or obvious and that (3) affected defendant's substantial rights. *Carines*, 460 Mich at 763. An error affects substantial rights when it affects the outcome of the proceedings, and reversal is only warranted if the error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceedings. *Id.* at 763-764.

The parties arguments concerning this issue are centered on the application of *People v McKewen*, 326 Mich App 342, 346; 926 NW2d 888 (2018), held in abeyance 924 NW2d 553 (2019). Defendant argues that the case requires this Court to vacate defendant's felonious assault conviction, while the prosecution argues that *McKewen* is distinguishable. The prosecution alternatively contends that *McKewen* was wrongly decided and goes against established caselaw. We need not address whether the case was wrongly decided, because we agree that it is distinguishable.[2]

In *McKewen*, the defendant was convicted of AWIGBH and felonious assault after stabbing the complainant in the chest. *McKewen*, 326 Mich App at 346. Just as in this case, the defendant argued that the trial court could only enter a judgment as to one of the convictions because of the language of the relevant statutes:

> The crime of assault with intent to do great bodily harm is defined by MCL 750.84(1)(a). That statute provides that a person who "[a]ssaults another *with intent to do great bodily harm*, less than the crime of murder" is guilty of a felony. The crime of felonious assault is defined by MCL 750.82(1), which provides that "a person who assaults another person with a . . . dangerous weapon *without intending to commit murder or to inflict great bodily harm less than murder* is guilty of a felony . . . ." [*Id.* at 352 (citations omitted).]

This Court determined that an AWIGBH conviction and a felonious assault conviction are mutually exclusive because "[b]y convicting defendant [of AWIGBH], [the jury] made a finding—one we may not disturb—that defendant acted with the intent to do great bodily harm. But that finding is inconsistent with felonious assault as defined by MCL 750.82." *Id.* at 353. This Court explained that, in a case involving a single assault, a defendant cannot commit both AWIGBH and felonious assault because a defendant "cannot both intend and yet *not* intend to do great bodily harm less than murder." *Id.* (quotation marks and citation omitted).

---

[2] It is worth noting that the prosecution's argument is that *McKewen* goes against our Supreme Court's decision in *People v Doss*, 406 Mich 90, 99; 276 NW2d 9 (1979). However, in *McKewen*, this Court addressed that exact issue and determined that there were important factual differences between the two cases. *McKewen*, 326 Mich App at 353-354. Published opinions of this Court have binding precedential effect on both the trial court and subsequent panels of this Court unless and until our Supreme Court takes action. MCR 7.215(J)(1); *Metamora Water Serv, Inc*, 276 Mich App at 387-388. Thus, were this case to present the same or substantially similar issues to those in *McKewen*, this panel would be required to follow the rule of law established therein. *People v Robar*, 321 Mich App 106, 117; 910 NW2d 328 (2017), citing *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007).

*McKewen* is distinguishable from the case at hand. In *McKewen*, the defendant committed one act of assault against the victim, whereas, in this case, defendant committed two acts of assault against Chapman. *Id*. at 346. The first assault occurred when defendant held the bat up to Chapman's head and threatened to strike Chapman, which was the basis for the felonious assault conviction. See *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979) ("[A] simple criminal assault is made out from *either* an attempt to commit a battery *or an unlawful act which places another in reasonable apprehension of receiving an immediate battery*.") (quotation marks and citation omitted; emphasis added). The second assault occurred when defendant actually struck Chapman's head with the bat, which was the basis for the AWIGBH conviction. *McKewen*, therefore, does not apply because, in this case, defendant committed two assaultive acts, and each act supports a corresponding conviction.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence that defendant broke and entered into Chapman's house to sustain the first-degree home invasion conviction. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The crime of first-degree home invasion is codified at MCL 750.110a(2), which states:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

The prosecution can establish first-degree home invasion "by providing 'alternative elements' that must be established, i.e., each element of first-degree home invasion can be established by satisfying one of two alternatives set forth in the statute." *People v Baker*, 288 Mich App 378, 384; 792 NW2d 420 (2010). Accordingly, the alternative elements of first-degree home invasion are as follows:

Element One: The defendant *either*:

1. breaks and enters a dwelling or

2. enters a dwelling without permission.

Element Two: The defendant either:

> 1. intends when entering to commit a felony, larceny, or assault in the dwelling or

> 2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, either:

> 1. the defendant is armed with a dangerous weapon or

> 2. another person is lawfully present in the dwelling. [*People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010) (second and third emphasis omitted).]

Defendant argues that there was insufficient evidence that defendant broke and entered Chapman's house. However, as stated in *Wilder*, breaking and entering a dwelling is one of two alternative elements, with the other alternative element being entry of a dwelling without permission. *Id.* At trial, Chapman testified that she gave defendant a key to her house while Chapman was visiting her daughter, so that defendant could look after the house and mow the lawn. When Chapman returned home, she requested that defendant return the key, and defendant refused. Chapman testified that she did not give defendant permission to enter her house, and yet, on the night of the assault, defendant did just that. Then, while defendant was inside Chapman's house, defendant assaulted Chapman and Smith, hitting both individuals in the head with an aluminum baseball bat. Defendant also stole Smith's wallet, which contained $15. During the period of time that defendant was inside Chapman's house, both Chapman and Smith were lawfully present.

Viewed in the light most favorable to the prosecution, there was sufficient evidence that defendant entered Chapman's house without permission while Chapman and Smith were lawfully inside the home, assaulted Chapman and Smith with a baseball bat, and committed a larceny by stealing Smith's wallet. Therefore, there was sufficient evidence to sustain defendant's first-degree home invasion conviction.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant lastly argues that defense counsel provided ineffective assistance of counsel by failing to request a jury instruction that "lack of permission" is an element of first-degree home invasion. We disagree.

This issue is unpreserved because defendant failed to move for a new trial or a *Ginther* hearing. *Payne*, 285 Mich App at 188. The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *Trakhtenberg*, 493 Mich at 47. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *Matuszak*, 263 Mich App at 48.

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). To succeed on a claim of ineffective assistance of counsel, "a defendant must establish that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted). The question of whether counsel performed reasonably is "an objective one and requires the reviewing court to 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Id*. at 670, quoting, *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant argues that defense counsel was ineffective for failing to object to the jury instructions because the jury was not instructed that defendant could not break or enter into a home that he had permission to enter. The trial court gave the following jury instruction:

> Defendant is also charged with home invasion in the first degree. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First, defendant entered a dwelling without permission. It does not matter whether the defendant got his entire body inside.

> Second, when the defendant entered, was present in, or leaving the dwelling he did commit a felonious assault which is a felony.

> Third, when the defendant entered, was present in, or was leaving the dwelling another person was lawfully present in the dwelling.

Defendant's argument is without merit because the prosecution's theory of the case, reflected by the given jury instruction, was that defendant entered Chapman's home without permission, as opposed to the alternative element of breaking and entering. Therefore, it is irrelevant whether defendant could break and enter a dwelling that he had permission to enter. Moreover, the trial court *did* give an instruction that lack of permission is an element of first-degree home invasion: "First, defendant entered a dwelling without permission."

To the extent defendant's argument could be construed as asserting that defense counsel should have requested a special jury instruction that defendant could not be convicted of first-degree home invasion if he had permission to enter Chapman's home, this argument also fails. Such an instruction is implicit in the standard jury instruction, which explains that, for the jury to convict defendant of first-degree home invasion, defendant must have entered Chapman's home without permission. The corollary to this instruction is that, if defendant had permission to enter

Chapman's home, the first element was not satisfied, and the jury would have been required to acquit defendant of the offense. Thus, defendant's requested jury instruction was implicit in the instructions actually given by the trial court. See *People v Johnson*, 128 Mich App 618, 623; 341 NW2d 160 (1983) ("The court's instruction requiring the jury to find that penetration was accomplished by force or coercion implicitly required the jury to find that the complainant did not consent to sexual intercourse before it could find defendant guilty.").

Because defendant's requested jury instruction was implied by the standard jury instructions, requesting the special jury instruction would have been duplicative and unnecessary. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Moreover, defense counsel is not ineffective for failing to request a different jury instruction when the trial court properly instructed the jury. *People v Cooper*, 236 Mich App 643, 659; 601 NW2d 409 (1999). Therefore, defendant failed to establish that defense counsel was ineffective for failing to request a jury instruction that defendant could not break and enter into a home that he had permission to enter.

## VI. CONCLUSION

The prosecution did not engage in misconduct by commenting on Chapman's credibility during closing arguments, and because the prosecution did not engage in misconduct, defense counsel was not ineffective for failing to object to the prosecutor's comments. Additionally, defendant's AWIGBH and felonious assault convictions were not mutually exclusive because the convictions were each supported by separate assaultive acts. There was also sufficient evidence to sustain defendant's first-degree home invasion conviction. Finally, defendant's trial counsel was not ineffective for declining to request a duplicative jury instruction.

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle