*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL GERMAINE BURTON,

        Defendant-Appellant.

UNPUBLISHED
July 16, 2020

No. 349081
Ingham Circuit Court
LC No. 18-000468-FC

Before: GADOLA, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of multiple charges arising from the shooting death of Lawrence McDonald and the carjacking of Don Everett. Defendant challenges the decision of his trial counsel to stipulate that he was not entitled to a self-defense instruction in relation to his charge of being a felon in possession of a firearm, as well as trial counsel's failure to object to the scoring of several sentencing variables and the admission and exclusion of certain evidence. None of defendant's arguments warrant relief. We affirm.

## I. BACKGROUND

At approximately 7 a.m. on May 9, 2018, defendant shot Lawrence McDonald in front of a home on Cleveland Street in Lansing. A neighbor and a morning jogger witnessed the shooting. The neighbor observed defendant pull into the driveway in a silver Acura and approach McDonald, who was standing on the sidewalk. The neighbor testified that McDonald was unarmed and appeared surprised or scared to see defendant. Defendant accused McDonald of "asking about" him and acted threatening. The neighbor witnessed defendant shoot McDonald two or three times. When McDonald fell, defendant stood over him and shot him two to three more times. The jogger testified that he heard shots after he passed defendant and McDonald on the sidewalk. When he turned around, the jogger saw defendant standing over McDonald, shooting him.

A utility worker driving through the neighborhood heard what he thought was "firecrackers going off." He then observed "a gentleman on the ground waiving [sic] up." He also saw a vehicle pull out of a driveway and drive past his work truck before a police car began following it. The utility worker called 911 and waited in his vehicle. While he waited, the utility worker saw a

-1-

vehicle pull into the driveway near the victim. The vehicle was "possibly" the same car that left the scene earlier. A man exited the vehicle and kicked the man lying on the ground.

A responding officer encountered defendant fleeing the scene in a silver Acura. Defendant led the officer on a high-speed chase. The officer abandoned the chase based on safety concerns. Shortly thereafter, defendant drove his vehicle into a ditch. Don Everett stopped to assist defendant and defendant stole his minivan. Defendant dropped his weapon in the process and forensics later connected the gun to the shooting. Defendant led the police on another high-speed chase in the stolen minivan, which ended when a pursuing officer rear ended him.

In the meantime, McDonald was transported to the hospital where he died from his wounds. McDonald had been shot five times. The angles of the bullet wounds supported that McDonald was shot while laying on the ground. And McDonald had a blunt-force injury to his head with marks matching the handle of defendant's gun, suggesting that defendant also pistol whipped the victim.

Defendant testified to a more complex series of events culminating in a shooting motivated by self-defense. McDonald's stepfather lived next door to BB and McDonald had previously dated BB. At the time of the shooting, defendant was dating BB. Defendant claimed that approximately a week earlier, he had learned that McDonald had physically abused BB and that McDonald was known to carry a gun. Defendant then brought a gun to BB's house to make her feel safe. Defendant admitted that he owned the gun before he learned that McDonald had abused BB. He "found it when [he] was emptying trash out" while working at a fast food restaurant.

On the day in question, defendant had slept at BB's home. He awoke at 6:40 a.m., "heard something around outside" and then heard someone close the home's screen door. Defendant testified that he went outside, walked around the house, but did not see anyone. To flush out the trespasser, defendant decided to drive away from the house. He drove to a nearby market, waited a few minutes, and then drove back. Upon his return, defendant saw McDonald trying to enter BB's house through a window. Defendant pulled McDonald out and hit him in the head with his gun. Defendant felt something in McDonald's pocket and believed it was a gun.

Defendant asserted that McDonald ran to the front of the house and defendant followed. McDonald threatened to kill defendant and BB. McDonald lunged at defendant and the two men fought over defendant's gun. Defendant admitted that he shot McDonald, but claimed he did so out of fear and that he only shot McDonald in the legs because he did not intend to kill him.

After he shot McDonald, defendant testified, he panicked and drove away at a high rate of speed. Defendant knew that the police were chasing him and he drove erratically to avoid capture. Defendant also admitted to stealing Everett's minivan at gunpoint.

The jury ultimately convicted defendant of second-degree murder, MCL 750.317; carjacking, MCL 750.529a; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; carrying a concealed weapon, MCL 750.227; felon in possession of a firearm (felon-in-possession), MCL 750.224f; third-degree fleeing a police officer, MCL 257.602a(3); and fourth-degree fleeing a police officer, MCL 257.602a(2).

## II. SELF-DEFENSE INSTRUCTION

The jury considered and rejected defendant's claim of self-defense to the murder charge. Through appellate counsel defendant contends that trial counsel ineffectively stipulated that he was not entitled to a self-defense instruction regarding the felon-in-possession charge. Defendant failed to preserve his challenge by requesting a new trial below or filing a motion to remand in this Court. Accordingly, our review is limited to mistakes apparent on the existing record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant was not entitled to a self-defense instruction to the felon-in-possession charge. Accordingly, counsel cannot be deemed ineffective in stipulating that the instruction was unwarranted in this case. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In *People v Dupree*, 486 Mich 693, 696-697; 788 NW2d 399 (2010), the Supreme Court determined that if supported by the evidence, a criminal defendant faced with a felon-in-possession charge is entitled to an instruction on common-law self-defense. In *Dupree*, 486 Mich at 699, the defendant wrested the victim's gun away from him and used it to shoot the victim. There was evidence that the victim "was larger than defendant, inebriated, and armed," and that the victim started a physical fight with the defendant. *Id*. at 698-699. The Court held that "defendant introduced evidence from which a jury could conclude that defendant's criminal possession of the firearm was justified because defendant honestly and reasonably believed that his life was in imminent danger and that it was necessary for him to exercise force to protect himself." *Id*. at 708.

A defendant facing a felon-in-possession charge may also be entitled to raise statutory self-defense. Under MCL 780.972(1) of the Self-Defense Act (SDA), MCL 780.971 *et seq*.:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. . . .

This Court extended the reasoning of *Dupree* to cases involving the statutory defense in *People v Guajardo*, 300 Mich App 26, 39-40; 832 NW2d 409 (2013). The defendant in *Guajardo* was not entitled to the instruction, this Court held, even though he only briefly possessed a gun owned by another resident of his boarding house, because he did not reasonably fear for his life. *Id*. at 32-33, 42-43.

Defendant did not briefly possess a weapon to defend himself. Rather, despite his status as a convicted felon, he maintained possession of a gun he found in a garbage can at work. He brought the weapon to his girlfriend's house, allegedly for protection against McDonald. Given the length of time that defendant possessed this gun, he could not claim that he had it only because he reasonably feared imminent death. He was not entitled to a self-defense instruction and counsel was not ineffective for taking that position at trial.

## III. SENTENCING GUIDELINES

In his Standard 4 brief, defendant argues that trial counsel was ineffective in failing to object to a plethora of scoring errors. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

Defendant first contends that the trial court erred in scoring Prior Record Variable (PRV) 5 at 10 instead of 5 points, warranting an objection from his attorney. PRV 5 considers prior misdemeanor convictions and juvenile adjudications. MCL 777.55. But not all prior misdemeanor convictions and juvenile adjudications are counted. In this regard, MCL 777.50(1) provides:

> In scoring [PRVs] 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication.

Under this "10-year rule"

> the issue is not whether 10 years [have] passed between the discharge from [a defendant's prior adjudication] and the present offense, but whether, starting with the present offense, there was ever a gap of 10 or more years between a discharge date and a subsequent commission date that would cut off the remainder of [a defendant's] prior convictions or juvenile adjudications. [*People v Billings*, 283 Mich App 538, 552; 770 NW2d 893 (2009).]

Defendant has never had a 10-year gap between committing misdemeanors. He committed the current offenses on May 9, 2018. He was convicted of misdemeanor offenses in 2017, 2010,

-4-

2007, and 2003. Given the number of his prior convictions, the court properly scored 10 points for PRV 5 under MCL 777.55(1)(c) and any objection would have been futile.

Defendant next contends that counsel should have urged a score of zero points for Offense Variable (OV) 4. OV 4 addresses "psychological injury to a victim." MCL 777.34(1). Ten points is assessed when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Although the victim need not actually seek out treatment to merit scoring this variable, MCL 777.34(2), there must be evidence of some injury. "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). "However, a trial court may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires that serious psychological injury *occurred* to a victim, not that a *reasonable* person in that situation would have suffered a serious psychological injury." *People v White*, 501 Mich 160, 164-165; 905 NW2d 228 (2017) (quotation marks and citation omitted, emphasis in original).

Here, the jogger testified that he was "really scared" when he heard the gunshots behind him and he "ran for his life" and hid because he was afraid the shooter might target him next. The utility worker testified that he did not leave his vehicle to assist McDonald, because he did not want to fall prey to a similar fate. However, "a victim's fear during a crime, by itself and without any other showing of psychological harm," is insufficient to support scoring OV 4. *Id*. at 164 (emphasis omitted). Although Everett testified to longer lasting trauma after the carjacking, that evidence did not pertain to the sentencing offense—second-degree murder—and therefore could not be counted. *People v Biddles*, 316 Mich App 148, 167; 896 NW2d 461 (2016). Accordingly, the court improperly assessed points for OV 4 and trial counsel should have objected.

Defendant further argues that the court should have assessed 10, rather than 25, points for OV 6. OV 6 addresses the offender's intent to kill or injure another individual. MCL 777.36(1). "The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). The court must assign a score of 25 points if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). The court must assign a score of 10 points if "a killing is intentional within the definition of second-degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(b).

Evidence at trial supported that defendant intended to kill McDonald and that McDonald's death did not occur in a "combative situation" or in self-defense. The prosecution presented evidence that defendant was the initial aggressor and that he shot McDonald, who was unarmed, several times after he was on the ground. Accordingly, the court's assessment of 25 points was appropriate and counsel had no ground to object.

Defendant argues that OV 9 should have been scored at zero instead of 10 points. In scoring OV 9, each person who was placed in danger of physical injury or loss of life must be counted as a victim. MCL 777.39(2)(a). A score of 10 points is appropriate when "there were two

to nine victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). Only conduct related to the sentencing offense—here, second-degree murder—may be considered under OV 9. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008).

In addition to McDonald, defendant's actions placed at least the jogger in danger of being shot and killed. See *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004) (holding that bystanders in close proximity to the offense can be counted as victims under OV 9). As two victims were placed in danger of loss of life, there was no ground to object to the scoring of OV 9.

Finally, defendant argues that OV 19 should have been scored at zero instead of 15 points. Under OV 19, a court must assess 15 points where "the offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(1)(b). "OV 19 may be scored for conduct that occurred *after* the sentencing offense was completed." *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010) (emphasis added). This includes "conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v McKewen*, 326 Mich App 342, 358; 926 NW2d 888 (2018) (quotation marks and citation omitted). Fleeing from the police can become "interference with the administration of justice" where there was an "effective command for the vehicle to stop, in the form of the police activating their lights and sirens." *People v Ratcliff*, 299 Mich App 625, 633; 831 NW2d 474 (2013), vacated in part on other grounds 495 Mich 876 (2013). Defendant admitted that he fled from the scene of both the shooting and the carjacking while police gave chase. This was more than adequate to support the score of 15 points for OV 19.

After sentencing, defendant's total OV score was calculated at 115 points, placing him in OV Level III. Less the 10 points erroneously scored for OV 4, defendant's total OV score would remain in Level III and his recommended minimum sentencing guidelines range would remain the same. Accordingly, defendant would not be entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006). While defense counsel erred, his error did not prejudice defendant and defendant is not entitled to relief.

## IV. CHARACTER EVIDENCE

Defendant finally complains that the trial court erred in admitting evidence of McDonald's peaceful character and excluding defendant's evidence of McDonald's violent character. Defendant failed to preserve his challenges by objecting below. See *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994). Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004).

In general, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" MRE 404(a). However, there are exceptions. MRE 404. MRE 404(a)(2) provides:

> When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character

trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor [is admissible.]

Defendant argues that the trial court improperly allowed evidence of McDonald's peacefulness. However, the record reveals that there was no such testimony and therefore no error in that regard.

Defendant further complains that BB's neighbor was improperly permitted to testify that McDonald was not known to carry a weapon. However, this testimony was given in response to a question by *defense counsel*, not the prosecution. Defendant cannot create error and then challenge it. See *People v Buie*, 491 Mich 294, 312; 817 NW2d 33 (2012) (a defendant is not permitted to "harbor error as an appellate parachute").

And defendant contends that he was denied his right to a fair trial and to present a defense when the trial court excluded evidence of McDonald's violent criminal history. A review of the record reveals that defendant never attempted to present evidence of McDonald's criminal history, violent or otherwise. The court could not erroneously exclude evidence it never had the opportunity to review. Accordingly, defendant has established no error warranting relief.

We affirm.

/s/ Michael F. Gadola
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens