*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 16, 2023

Plaintiff-Appellee,

v

No. 359361
Berrien Circuit Court
LC No. 2019-001604-FH

LAKEISHA SHAREE NEWBERN,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a); and assault with a dangerous weapon (felonious assault), MCL 750.82. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 60 to 240 months' imprisonment for the AWIGBH conviction and 48 to 180 months' imprisonment for the felonious-assault conviction. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from a stabbing assault that occurred at J & B Party Store in Benton Harbor. Defendant and the victim had been in a dating relationship that ended before the assault. The clerk working behind the counter at J & B on the evening in question testified that he saw defendant attack the victim twice with a knife. The victim called 911 and reported the stabbing. He told the dispatcher that a "dude" had stabbed him. Officer Trevor Wortman of the Benton Harbor Department of Public Safety arrived at the scene and encountered the victim outside near the entrance to J & B. The victim was holding an item that looked like a shirt to the left side of his neck and that item was bloody. The shirt that he was wearing was bloody. The victim had a large laceration on his neck and a smaller laceration on his chin. The treating paramedic testified that the victim's larger laceration was five or six inches long. The victim reported that he was "jumped" by a man near J & B. He reiterated a similar story when he was being treated at the hospital. However, Officer Wortman obtained surveillance video from J & B, which showed that a woman

attacked the victim. Sergeant Joel Deenik identified defendant as the woman depicted in the surveillance video.

After a two-day trial, the jury found defendant guilty of AWIGBH and felonious assault.[1] Defendant was sentenced, and this appeal followed.

## II. ANALYSIS

## A. PRESUMPTION OF INNOCENCE

Defendant asserts that the presence of four deputies in the courtroom during her trial undermined the presumption of innocence. We disagree.

Defendant never challenged the presence of deputies in the courtroom during trial. As a result, this issue is unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Because this claim is unpreserved, it is reviewed for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 752-753; 597 NW2d 130 (1999). Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"Every defendant has a due process right to a fair trial, which includes the right to be presumed innocent." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010). "Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Id*. (quotation marks and citation omitted). As a result, trial "courts must be alert to courtroom procedures or arrangements that might undermine the presumption of innocence." *Id*. "However, not every practice tending to single out the accused must be struck down. This is because the jurors are understood to be quite aware that the defendant appearing before them did not arrive there by choice or happenstance . . . ." *Id*. (quotation marks and citation omitted; ellipsis in original).

First, defendant never challenged the presence of deputies at her trial. In fact, during Lieutenant Jeff Duffield's cross-examination at the hearing on the prosecution's motion to shackle defendant at trial, defense counsel asked whether extra deputies would be available if necessary. Lieutenant Duffield stated that extra deputies would be available. This questioning indicates that defense counsel was implying that the presence of deputies—or extra deputies—negated the need to shackle defendant. As a result, it is now contradictory to argue on appeal that the presence of a certain number of deputies was prejudicial. "Counsel may not harbor error as an appellate parachute." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000).

---

[1] The jury also found defendant guilty of aggravated domestic assault. The prosecution later dismissed that charge.

Second, there is no record evidence concerning the number of deputies who were actually present during defendant's trial. Lieutenant Duffield testified that it was customary for four deputies to be present at a felony criminal trial for a defendant who was in custody. Defendant asserts that four deputies was excessive and prejudicial; however, this assertion is not supported by anything in the record.

Third, assuming that four deputies attended defendant's trial, she has failed to show that the deputies' presence was prejudicial. In *Holbrook v Flynn*, 475 US 560, 568-569; 106 S Ct 1340; 89 L Ed 2d 525 (1986), the United States Supreme Court distinguished the presence of officers in the courtroom from practices such as shackling, explaining that the presence of security personnel in the courtroom is not the sort of inherently prejudicial practice that is only justified by an essential state interest specific to each trial. According to the Supreme Court,

> [w[hile shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm. [*Id*. at 569.]

In this case, there is no information in the record concerning the location of the deputies. Nonetheless, in *Holbrook*, 475 US at 571, the Supreme Court concluded that the presence of four uniformed troopers sitting in the front row of the spectator section during the defendant's trial did not present an unreasonable risk of prejudice. The Court noted that "[e]ven had the jurors been aware that the deployment of troopers was not common practice . . . we cannot believe that the use of the four troopers tended to brand respondent in their eyes with an unmistakable mark of guilt." *Id*. (quotation marks and citation omitted). The Court further stated that "[f]our troopers are unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings." *Id*.

In the present case, accepting defendant's assertion that four deputies were present during her trial, testimony established that such practice was normal in Berrien County, and there is no evidence that the deputies' presence created the impression that defendant was especially dangerous or untrustworthy. *Id*. at 569. As a result, defendant has not established that the practice is inherently prejudicial or that her right to be presumed innocent was violated. See *Rose*, 289 Mich App at 521.

## B. DOUBLE JEOPARDY

Next, defendant argues that her convictions of AWIGBH and felonious assault violate double jeopardy. We disagree.

Defendant never challenged her convictions of both AWIGBH and felonious assault on the basis of double jeopardy. As a result, this claim is unpreserved. See *Metamora Water Serv, Inc*, 276 Mich App at 382. Therefore, it is also reviewed for plain error affecting substantial rights. See *Carines*, 460 Mich at 752-753.

The Fifth Amendment of the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." US Const, Am V. Similarly, the Michigan Constitution provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15.

"The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015) (quotation marks and citation omitted). This case involves the third strand, which is also known as the "multiple punishments" strand of double jeopardy. *Id.*

"The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *Id.* at 17-18 (quotation marks and citation omitted). The ultimate question is whether the Legislature authorized "cumulative punishment under two statutes." *Id.* at 18 (quotation marks and citation omitted). However, the Legislature "does not always clearly indicate its intent with regard to the permissibility of multiple punishments." *Id.* at 19. "When legislative intent is not clear, Michigan courts apply the 'abstract legal elements' test articulated in [*People v Ream*, 481 Mich 223; 750 NW2d 536 (2008)] to ascertain whether the Legislature intended to classify two offenses as the 'same offense' for double jeopardy purposes." *Id.* "Under the abstract legal elements test, it is not a violation of double jeopardy to convict a defendant of multiple offenses if each of the offenses for which defendant was convicted has an element that the other does not . . . ." *Id.* (quotation marks and citation omitted; ellipsis in original). In other words, "under the *Ream* test, two offenses will only be considered the 'same offense' where it is impossible to commit the greater offense without also committing the lesser offense." *Id.*

In this case, the offenses in question are AWIGBH and felonious assault. MCL 750.84 is the statute that concerns the offense of AWIGBH. In pertinent part, MCL 750.84(1)(a) prohibits the assault of "another person with intent to do great bodily harm, less than the crime of murder." The crime of felonious assault is addressed by MCL 750.82. In pertinent part, MCL 750.82(1) provides that "a person who assaults another person with a . . . knife, . . . or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony."

In *People v Davis*, 320 Mich App 484, 489; 905 NW2d 482 (2017) (*Davis I*), vacated in part by 503 Mich 984 (2019), this Court considered whether the defendant's convictions for both

AWIGBH and aggravated domestic assault[2] were mutually exclusive. On appeal, the defendant argued that his convictions violated double-jeopardy principles. *Id*. However, this Court determined that double jeopardy was "not the proper initial focus." *Id*.

This Court ultimately determined that the defendant was "improperly convicted for a single act under two statutes with contradictory and mutually exclusive provisions." *Id*. According to this Court, the offenses were "mutually exclusive from a legislative standpoint" because AWIGBH required "the defendant to act with the specific intent to do great bodily harm less than murder," while aggravated domestic assault "is committed without intent to do great bodily harm less than murder." *Id*. at 490. This Court stated that the plain language of the statutes revealed "that a defendant cannot violate both statutes with one act as he or she cannot both intend and yet *not* intend to do great bodily harm less than murder." *Id*. This Court observed that the jury did not make contradictory findings because the trial court did not instruct the jury that in order to convict the defendant of aggravated domestic assault it had to find that the defendant did not act with intent to do great bodily harm. *Id*. at 494. As this Court further noted, the lack of intent to do great bodily harm is not an element of the offense of aggravated domestic assault because it constitutes an "absence of an element" that the prosecution is not required to establish beyond a reasonable doubt. *Id*. at 494-495 (quotation marks and citation omitted). Because the jury affirmatively found that the defendant acted with the intent to do great bodily harm less than murder by convicting defendant of AWIGBH and the trial court was not required to inform the jury that a lack of such intent accompanies the aggravated domestic assault charge, this Court determined that the defendant's AWIGBH conviction was supported by "jury-found facts." *Id*. at 496. As a result, this Court affirmed the AWIGBH conviction and vacated the aggravated domestic assault conviction as "an improperly entered mutually exclusive verdict." *Id*.

This Court considered a similar issue in *People v McKewen*, 326 Mich App 342, 352; 926 NW2d 888 (2018), app for lv held in abeyance by 975 NW2d 477 (2022). In that case, the defendant challenged his convictions for both AWIGBH and felonious assault arising from a single incident involving one victim. *Id*. at 351. First, this Court rejected the defendant's argument that his convictions for a single act violated the constitutional protection against multiple punishments for the same offense, explaining that the claim had already been rejected by the Michigan Supreme Court in *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007), and *People v Wilson*, 496 Mich 91, 102; 852 NW2d 134 (2014), abrogated on other grounds by *Bravo-Fernandez v United States*, 580 US 5; 137 S Ct 352; 196 L Ed 2d 242 (2016). *McKewen*, 326 Mich App at 351-352.

However, this Court agreed with the defendant that the language of the statutes defining these offenses required the court to enter a conviction as to only one of the offenses. *Id*. at 352. This Court relied on the reasoning employed in *Davis I*, and observed that the trial court did not instruct the jury concerning the lack of intent to do great bodily harm for the felonious-assault offense because it was a "negative element" that was not required to be found by the jury. *Id*.

---

[2] According to MCL 750.81a(2), "an individual who assaults . . . an individual with whom he or she . . . has had a dating relationship . . . without a weapon and inflicts serious or aggravated injury upon that individual without intending to commit murder or to inflict great bodily harm less than murder" is guilty of aggravated domestic assault.

at 352-353 (quotation marks and citation omitted). On the other hand, this Court explained that the "trial court specifically instructed the jury that in order to convict [the] defendant of AWIGBH, it had to find that he intended to do great bodily harm." *Id.* at 353 (quotation marks omitted). This Court went on to conclude that because the jury convicted the defendant of AWIGBH, it made a finding that the defendant acted with the intent to do great bodily harm and this Court could not disturb that finding. *Id.* Nonetheless, this Court determined that the finding was inconsistent with a conviction of felonious assault. *Id.* Accordingly, the Court concluded that the proper resolution was to affirm the AWIGBH conviction and vacate the felonious-assault conviction. *Id.* at 357.

After this Court issued its opinion in *McKewen*, the Michigan Supreme Court vacated the portion of this Court's opinion in *Davis I* that determined that the defendant's convictions for AWIGBH and aggravated domestic assault were the result of mutually exclusive verdicts. *People v Davis*, 503 Mich 984; 923 NW2d 891 (2019) (*Davis II*). The Supreme Court explained that "[r]egardless of whether this state's jurisprudence recognizes the principle of mutually exclusive verdicts," this case did not present that issue. *Id.* According to the Supreme Court,

> [s]ince, with respect to the aggravated domestic assault conviction, the jury never found that defendant acted without the intent to inflict great bodily harm, a guilty verdict for that offense was not mutually exclusive to defendant's guilty verdict for AWIGBH, where the jury affirmatively found that defendant acted with intent to do great bodily harm. [*Id.*]

As a result, the Supreme Court concluded that this Court "erred by relying on the principle of mutually exclusive verdicts to vacate [the] defendant's aggravated domestic assault conviction." *Id.* Moreover, the Supreme Court observed that this Court declined to address the merits of the defendant's double-jeopardy argument and remanded the case to this Court for reconsideration of that claim. *Id.*

On remand, in *People v Davis*, unpublished per curiam opinion of the Court of Appeals, issued November 12, 2019 (Docket No. 332081) (*Davis III*), pp 6-7, a panel of this Court held that the defendant's convictions for AWIGBH and aggravated domestic assault did not violate double-jeopardy principles.[3] According to the *Davis III* panel, the statutory language of MCL 750.84(3) evinced a legislative intent permitting multiple punishments. *Id.* at 4. MCL 750.84(3) provides that "[t]his section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section." The panel in *Davis III*, unpub op at 4, concluded that the statutory language was clear that a defendant could be punished under MCL 750.84, in addition to any other violation of law arising from the same conduct. Therefore, the panel concluded that there was no double-jeopardy violation. *Id.*

The panel considered the defendant's assertion that the language of the two offenses conflicted, which demonstrated the Legislature's intent that a defendant could not be convicted of both offenses for the same conduct. *Id.* However, the panel determined that accepting defendant's position would require the panel to either ignore or rewrite the language of MCL 750.84(3), which

---

[3] Although unpublished decisions are not binding on this Court, they can be persuasive. MCR 7.215(C)(1); *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004).

the panel declined to do. *Id*. The panel finally considered the legislative history of MCL 750.84 and MCL 750.81a. *Id*. at 4-6. The panel noted that the two statutes were amended at about the same time and "[h]ad the Legislature intended that an AWIGBH conviction would preclude a conviction under MCL 750.81a, it could have said so." *Id*. at 6.

We believe that defendant's claim that her convictions of AWIGBH and felonious assault violate double jeopardy is without merit. This Court outright rejected the same claim in *McKewen*, 326 Mich App at 351-352. Moreover, in *Davis III*, unpub op at 4, a case involving similar facts, a panel of this Court concluded that a defendant could be convicted of AWIGBH and aggravated domestic assault arising from the same conduct because MCL 750.84(3) made it clear that a defendant could be punished under MCL 750.84, and for any other violation of law arising out of the same conduct. As a result, it follows that defendant may be convicted of AWIGBH and felonious assault arising out of the same conduct without violating double-jeopardy principles. See *id*.

The *Davis III* panel further rejected the defendant's argument that AWIGBH and aggravated domestic assault were mutually exclusive because one required the defendant to act with the specific intent to do great bodily harm less than murder, while the other was committed without intended to do great bodily harm. *Id.*

On the other hand, in *McKewen*, 326 Mich App at 352-353, this Court concluded that the defendant's convictions of AWIGBH and felonious assault arising from the same conduct was improper because the offenses were mutually exclusive. We acknowledge that although there is a pending application in the Michigan Supreme Court to appeal this Court's decision in *McKewen*, it is published authority that has not been overruled. See MCR 7.215(C)(2). However, the Court's decision in *McKewen* relied on the analysis of *Davis I*, which was later vacated by the Michigan Supreme Court. *Davis II*, 503 Mich at 984. According to the Supreme Court, because the jury never found that the defendant acted without the intent to inflict great bodily harm with respect to the aggravated domestic assault conviction, a guilty verdict for that offense was not mutually exclusive to the defendant's guilty verdict for AWIGBH in which the jury affirmatively found that the defendant acted with the intent to do great bodily harm. *Id*.

Similarly, in this case, the jury was instructed that the offense of AWIGBH required that defendant "intended to cause great bodily harm." On the other hand, the court did not instruct the jury that felonious assault required defendant not to act with the intent to do great bodily harm less than murder. Instead, the jury was instructed that to be found guilty, defendant would have "intended either to injure [the victim] or to make [the victim] reasonably fear an immediate battery." Therefore, "the jury never found that defendant acted without the intent to inflict great bodily harm," and the guilty verdict for felonious assault "was not mutually exclusive to defendant's guilty verdict for AWIGBH, where the jury affirmatively found that defendant acted with intent to do great bodily harm." *Id*.

## C. SUFFICIENCY OF THE EVIDENCE

Finally, defendant contends that her convictions were not supported by sufficient evidence. We disagree.

When reviewing a sufficiency of the evidence claim, this Court reviews the evidence de novo. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This Court reviews "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id.* "Further, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id.*

As stated, MCL 750.84 is the statute that concerns the offense of AWIGBH. In pertinent part, MCL 750.84(1)(a) prohibits the assault of "another person with intent to do great bodily harm, less than the crime of murder." "The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). "This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature." *Id.* (quotation marks and citation omitted). "AWIGBH is a specific intent crime." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id.* at 629. Moreover, "injuries suffered by the victim may also be indicative of a defendant's intent." *Id.*

The crime of felonious assault is addressed in MCL 750.82. In pertinent part, MCL 750.82(1) provides that "a person who assaults another person with a . . . knife, . . . or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony." "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

In this case, the clerk who was working at J & B on the night in question provided sufficient evidence for a reasonable jury to find defendant guilty of both offenses. He stated that he witnessed defendant stab the victim twice with a knife. Defendant argues that the clerk could not have properly witnessed the attack, but the clerk testified that he had a good view because the attack occurred next to the counter. The jury was permitted to accept the clerk's testimony. "Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992) (quotation marks and citation omitted).

Moreover, the jury was able to view the surveillance video and could make its own determination. Officer Wortman testified that the video showed that the victim was attacked twice by a woman holding an object that he described as a "blade." Another officer later identified defendant as the woman in the video.

Defendant acknowledges that the video shows her attacking the victim, but she asserts that there was no evidence that she was holding a knife. This is not accurate. Both the clerk and Officer Wortman testified that defendant stabbed the victim with a knife or blade. The victim suffered a five- to six-inch laceration to his neck, which is consistent with an attack with a sharp

object. The victim also testified that the doctor who treated him opined that the wound was made with some type of blade. As a result, there was sufficient evidence for a reasonable jury to conclude that defendant was wielding some kind of knife when she attacked the victim. See *Avant*, 235 Mich App at 507. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence presented for a reasonable jury to find that the elements of AWIGBH and felonious assault were established beyond a reasonable doubt. See *id*.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron