# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BENJAMIN KEITH MCKEWEN,

Defendant-Appellant.

FOR PUBLICATION
October 25, 2018
9:05 a.m.

No. 339068
Isabella Circuit Court
LC No. 2016-001924-FH

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

SHAPIRO, J.

Defendant appeals his convictions following a jury trial of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and felonious assault, MCL 750.82. The trial court sentenced defendant to concurrent prison terms of five to ten years for the AWIGBH conviction, and two to four years for the felonious assault conviction. For the reasons set forth below, we affirm defendant's conviction for AWIGBH, but vacate his conviction for felonious assault.

## I. FACTS

Defendant's convictions arose from an altercation between himself and the complainant, Aristotle Zarkin, at a birthday party. Zarkin confronted defendant after his girlfriend told him that defendant's conduct towards her made her feel uncomfortable. According to witnesses, the two pushed or punched each other, after which Zarkin fell to the ground. When he got back up, witnesses noticed that he was bleeding profusely from his chest. Although Zarkin initially thought he had cut himself from landing on a broken shard of glass, witnesses and investigators did not find any glass or other sharp object in the area where Zarkin fell. Medical providers believed that Zarkin received a stab wound to his chest. The object made a clean cut, and it traveled through muscle, fascia, and cartilage, and then severed his mammary artery. None of the witnesses to the altercation observed defendant armed with a knife, but a witness testified that after Zarkin fell to the ground, defendant kept his right hand behind his back as if trying to conceal something, and that he continued to keep his right hand concealed from view as he walked away after the altercation.

## II. ANALYSIS

### A. DENIAL OF MOTION FOR DIRECTED VERDICT

On appeal, defendant first argues that the trial court erred by denying his motion for a directed verdict. Defendant argues that the evidence was insufficient to show that he actually possessed a knife and stabbed Zarkin, which in turn rendered the evidence insufficient to support his convictions. We disagree.[1]

Various witnesses testified that after defendant either pushed or punched Zarkin in the chest during the altercation, Zarkin got up from the ground with a chest wound that bled profusely. It is undisputed that none of the witnesses actually saw defendant with a knife. However, an emergency medical technician, who was present at the party and provided assistance after Zarkin was injured, testified that the wound appeared to be a stab wound that was made by something very sharp, narrow, long, and skinny. The emergency room physician, who treated Zarkin at McLaren Hospital, similarly testified that the wound was a stab wound with clean edges and made by something sharp, and that Zarkin sustained a laceration to his mammary artery.

Dr. Daniel Meldrum, M.D., a board-certified cardiothoracic and general trauma surgeon who treated Zarkin at Covenant Medical Center, testified that based on his observations during the physical examination, Zarkin was stabbed with a knife about three to four inches long and approximately an inch in width, and three to four millimeters thick. Dr. Meldrum also explained that the trajectory of the wound was at an angle from "outside to inside" rather than "straight on," and the trajectory would be "counterintuitive" with falling directly onto glass. One of the eyewitnesses testified that she saw defendant strike Zarkin in the chest, but defendant did not throw a "normal" punch with his knuckles "straight to whatever body part he was hitting." Instead, he struck at Zarkin "sideways" with the thumb and forefinger of his hand using a roundhouse punch.

Although defendant and other witnesses initially thought that defendant had fallen on a piece of glass, witnesses and investigators did not see any large shards of glass or other items on the ground that might have caused Zarkin's injury when he fell. And although none of the

---

[1] We review a trial court's decision denying a motion for a directed verdict de novo. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). Our task is to review the evidence in the light most favorable to the prosecution to determine whether the essential elements of the charged crimes were proven beyond a reasonable doubt. *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "[A] reviewing court is required to draw all reasonable inferences and make credibility determinations in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). With regard to an actor's intent, due to the difficulties inherent in "proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999).

witnesses actually saw a knife, a witness testified that after the altercation, defendant held his right hand behind his back and appeared to be trying to conceal something as he argued with bystanders and as he left the scene.

Viewed in a light most favorable to the prosecution, the testimony of the emergency room physician and the surgeon combined with the evidence that defendant was concealing his right hand behind his back following the altercation was sufficient to enable the jury to infer, and conclude beyond a reasonable doubt, that defendant stabbed Zarkin in the chest with a knife. Thus, the jury could reasonably conclude that defendant's use of a knife to stab Zarkin in the chest proved that he assaulted Zarkin with a dangerous weapon, and did so with the intent to cause great bodily harm less than murder. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

Accordingly, sufficient evidence supports defendant's convictions.

## B. EXPERT TESTIMONY

Defendant next argues that the trial court abused its discretion by determining that Dr. Meldrum was qualified to offer his expert opinion that Zarkin's wound was a stab wound from a knife.[2]

The admissibility of expert testimony is governed by MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Before admitting expert testimony, a trial court must "ensure that the testimony, (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012) (footnotes omitted). In this case, defendant challenges the second and third requirements. He argues that Dr. Meldrum was not qualified to testify as an expert, and that his opinion testimony was not based on reliable principles and methods. We disagree.

---

[2] We review a trial court's decision to admit evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

With respect to the second requirement, the trial court found that Dr. Meldrum was qualified to render an opinion regarding the nature of Zarkin's wound based on his training and decades of experience as a cardiothoracic surgeon, general surgeon, and trauma surgeon. Dr. Meldrum testified about his qualifications and board certifications including the fact that as part of the periodic recertification process, he is required to address identification of the instrumentality that caused a particular wound. Dr. Meldrum also testified that he trained under a preeminent expert in trauma surgery, and received instruction in making a determination in different types of wounds.

Defendant argues that Dr. Meldrum was not qualified because he did not possess the same qualifications as, for example, a medical examiner. Defendant appears to conflate the qualifications for testifying as an expert under MRE 702 with the requirements of MCL 600.2169, which governs a witness's qualifications for testifying about the standard of care in a medical malpractice case. In contrast to MCL 600.2169, however, nothing in MRE 702 requires either that a medical expert be board certified in a particular specialty, such as forensic pathology, or to have devoted a majority of his practice to a given specialty to be qualified to offer expert testimony. The trial court did not abuse its discretion in ruling that Dr. Meldrum's training, education, and experience qualified him as an expert in determining the nature of Zarkin's wound.

With respect to the third requirement, the trial court found that Dr. Meldrum's opinion was based on sound scientific principles. The court noted that Dr. Meldrum was required to investigate other possible causes of the wound. Specifically, he needed to check whether glass or other particles were present in the wound to make sure that no particles were left behind to cause further injury and that he found none. Dr. Meldrum explained his process of ruling out other potential explanations for Zarkin's wound through differential diagnosis, a well-recognized process. See *Lowery v Enbridge Energy Ltd Partnership*, 500 Mich 1034, 1046; 898 NW2d 906 (2017) (MARKMAN, J. concurring).

For these reasons, the trial court did not abuse its discretion in finding that Dr. Meldrum's opinion testimony was based on reliable data, principles, and methodologies.

## C. CHALLENGES TO THE DUAL CONVICTIONS

Defendant raises two arguments challenging his convictions for both AWIGBH and felonious assault arising out of a single incident with one victim. First, defendant argues that his conviction for both offenses for a single act violates the constitutional double jeopardy protection against multiple punishments for the same offense. However, this argument was rejected by the Supreme Court in *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007), and was more fully discussed in *People v Wilson*, 496 Mich 91, 102; 852 NW2d 134 (2014), abrogated on other grounds by *Bravo-Fernandez v United States*, ___ US ___; 137 S Ct 253; 196 L Ed 2d 242 (2016), where the Court held that "[t]he very application of the Double Jeopardy Clause necessarily requires more than one trial." Next, defendant argues that the language of the statutes defining these offenses require the court to enter a judgment of conviction only as to one of the two offenses for which the jury convicted him. We agree.

The crime of assault with intent to do great bodily harm is defined by MCL 750.84. That statute provides that a person who "[a]ssaults another *with intent to do great bodily harm,* less than the crime of murder" is guilty of a felony. (Emphasis added). The crime of felonious assault is defined by MCL 750.82, which provides that "a person who assaults another person with a . . . dangerous weapon *without intending to commit murder or inflict great bodily harm less than murder.*" (Emphasis added).

In *People v Davis*, 320 Mich App 484, 498-496; 905 NW2d 482 (2017), lv gtd 910 NW2d 301 (2018), we held that in a case involving a single assault, a judgment of conviction for both AWIGBH and aggravated domestic assault are inconsistent because they are mutually exclusive.[3] As we stated in *Davis*:

> Clearly, these two offenses are mutually exclusive from a legislative standpoint. One requires the defendant to act with the specific intent to do great bodily harm less than murder; the other is committed without intent to do great bodily harm less than murder. We must give effect to the plain and unambiguous language selected by the Legislature. And the plain language of the statutes reveals that a defendant cannot violate both statutes with one act as he or she cannot both intend and yet *not* intend to do great bodily harm less than murder. [*Id*. at 490 (citations omitted).]

In this case, the trial court did not instruct the jury "regarding the lack of intent to do great bodily harm necessary to meet the statutory definition of [felonious assault]" because it is a "negative element" that need not be found by a jury. *Id*. at 494-495 (quotation marks and citation omitted). However, the trial court specifically instructed the jury that in order to convict defendant for AWIGBH, they must find that he "intended to do great bodily harm." By convicting defendant on that charge, they made a finding—one we may not disturb—that defendant acted with the intent to do great bodily harm. But that finding is inconsistent with felonious assault as defined by MCL 750.82. We, therefore, conclude that the proper action for the trial court is to enter judgment of conviction on the AWIGBH charge, but not on felonious assault, even though the jury found defendant guilty of both.

Our dissenting colleague takes the view that our decision is inconsistent with *People v Doss*, 406 Mich 90, 99; 276 NW2d 9 (1979). We disagree. Doss was a police officer who shot a suspected burglar. *Id*. at 94. He was charged with manslaughter and bound over. *Id*. at 95. This Court concluded that the prosecution had not shown sufficient evidence to show that the defendant acted without malice. *Id*. at 96-97. The prosecution appealed to the Supreme Court, which reversed, holding that the prosecution need not present evidence on a negative element, i.e., that the defendant acted without malice. *Id*. at 97-99. As an example, the Court explained that the prosecution does not need to prove that a defendant was not armed in order to convict of unarmed robbery. *Id*. at 99.

---

[3] Although *Davis* dealt with aggravated domestic assault, this does not change the analysis here.

However, the issue before us today, and in *Davis,* was not addressed in *Doss.* First, *Doss* did not involve review of a judgment of conviction and the underlying jury verdict; the only issue was whether proof of the negative element was required in order to bind over the defendant on the charge of manslaughter. Second, in *Doss,* the only crime at issue was manslaughter—the court was not considering how to address a jury verdict that convicted the defendant of *both* manslaughter and murder for the same killing. In other words, there was no issue of inconsistent verdicts in *Doss.* The fact that we do not instruct on negative elements is not problematic in single offense cases. However, it is problematic when two crimes are charged based on the same conduct, one of which has a negative element that is the direct opposite of a positive element of the other charge.

Our review of the caselaw demonstrates that almost all cases dealing with this issue involved inconsistent verdicts arising out of compound felonies such as felony firearm and felony murder. These cases offer little guidance in the present setting because in the compound felony setting, the jury is fully instructed on the elements of both offenses and is therefore aware that conviction of a compound felony is logically inconsistent with acquittal of the predicate felony. If they nevertheless choose to enter inconsistent verdicts, they may do so and that conviction will stand. The Supreme Court addressed this issue in *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980):

> Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility. [Footnotes omitted.[4]]

Following *Vaughn*, the Supreme Court decided *People v Lewis*, 415 Mich 443, 446; 330 NW2d 16 (1982), in which the situation was reversed: the defendant was convicted of felony-firearm but acquitted of the underlying felony. The Court noted that

> [t]he inconsistency in the instant verdicts suggests that the juries either compromised or were lenient.

> If the jury was lenient, the defendant was not prejudiced by the inconsistency in the verdicts and has no cause for complaint. In that hypothesis,

---

[4] See also *People v Putnam*, 309 Mich App 240, 251; 870 NW2d 593 (2015) (upholding conviction for armed robbery and second-degree murder despite the jury's acquittal of first-degree felony murder).

-6-

although 12 jurors agreed that the defendant was guilty beyond a reasonable doubt of the underlying felony, they nonetheless extended mercy, convicting him only of what they may have thought was a lesser offense instead of both. [*Id*. at 450-451 (footnotes omitted).]

The instant case, like *Davis*, however, does not involve a compound offense. It involves conviction of two crimes that by the plain text of the relevant statutes are fundamentally inconsistent. And unlike the cases involving compound offenses, the jury does not know that its verdicts are inconsistent. Given that the instructions do not inform the jury of the negative element, the jury would conclude that convictions on both charges is fully consistent. The instant verdict, therefore, was *not* the result of compromise or leniency since defendant was convicted on both charges. Nor could it be the result of jury error beyond a court's ability to correct. To restate the point, in a case in which a defendant is charged only with felonious assault the fact that there is no instruction on the negative element is of no consequence. However, where the defendant is charged with both felonious assault and AWIGBH, the lack of instruction on the negative element deprives the jury of knowledge that their verdicts are inconsistent. As noted, if a jury decides to render what it knows to be an inconsistent verdict it may do so and the court may not interfere. However, where the jury is unaware that its verdict is inconsistent, we should not presume that the jury would have reached the same verdict had it known the full text of the statute under which the defendant is charged.

Our dissenting colleague concludes that because the jury is not asked to find the negative element in felonious assault that the two verdicts are not in conflict. We agree that there is no conflict regarding the factual findings made by the jury consistent with the instructions it was given. However, the court, which knows the full text of the relevant statutes, is obviously aware of the inconsistency and it is the role of the court to assure that the entirety of the felonious assault statute is considered. Failing to do so renders a portion of the statute nugatory. *People v Kloosterman*, 296 Mich App 636, 639-640; 823 NW2d 134 (2012). While the jury does not know that a finding of intent to do great bodily harm is inconsistent with the statutory definition of felonious assault, the court does and may not enter judgment when the jury has found that one of its elements, albeit a negative element, has not and cannot be met. The court, cognizant of the entire statute, must assure that the judgment it enters is consistent with the law as written. Accordingly, we conclude that defendant's felonious assault conviction should be vacated and the AWIGBH conviction affirmed.

D. OFFENSE VARIABLE (OV) 19

Finally, defendant argues that the trial court erred when it assessed 10 points for offense variable (OV) 19 of the sentencing guidelines. We disagree.[5]

---

[5] In *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016), this Court observed:

Issues involving the proper interpretation and application of the legislative sentencing guidelines, MCL 777.11 *et seq*., are legal questions that this Court reviews de novo. On appeal, the circuit court's factual determinations are

MCL 777.49 provides, in pertinent part:

Offense variable 19 is a threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services. Score offense variable 19 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(c) The offender otherwise interfered with or attempted to interfere with the administration of justice ……………………………………………….. 10 points

"Interfering or attempting to interfere with the administration of justice includes acts that constitute obstruction of justice, but is not limited to such acts." *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *Sours*, 315 Mich App at 349. See also *People v Barbee*, 470 Mich 283, 288; 681 NW2d 348 (2004) (giving a false name to a police officer is interference with the administration of justice), and *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013).

Although this case does not involve the combination of factors that was found to constitute interference with the administration of justice in *Ericksen,* 288 Mich App at 204, we agree that defendant's act of disposing of the weapon used to stab Zarkin, as well as the clothing he was observed wearing during the attack, supports the trial court's finding that defendant interfered with the police investigation of the crime, and thus interfered with or attempted to interfere with the administration of justice. Accordingly, the trial court did not err when it assessed 10 points for OV 19.

Affirmed in part and vacated in part.

/s/ Douglas B. Shapiro
/s/ Cynthia Diane Stephens

reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [Citations and quotations omitted.]