*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS DEANGELO MCLEAN,

        Defendant-Appellant.

UNPUBLISHED
May 18, 2023

No. 358876
Macomb Circuit Court
LC No. 2020-000338-FC

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions and sentences for possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and involuntary manslaughter, MCL 750.329. Defendant was sentenced to 730 days' imprisonment for the felony-firearm conviction, and 29 to 180 months' imprisonment for the involuntary-manslaughter conviction. We affirm.

## I. FACTS

This case arises from the death of Derica Blessitt. On the night of September 28 and early morning hours of September 29, 2019, Blessitt was with her friends, Shaniyah Sims and Persha McClendon, traveling to Blessitt's house in Detroit. On the drive to her house, Blessitt received a series of phone calls from defendant. During one of the calls, defendant told Blessitt that he would pay her $60 "[t]o have sex" with him. Blessitt hung up, but then shortly after, she called defendant back and agreed. When Blessitt, Sims, and McClendon got to Blessitt's house, Sims and McClendon went into the bedroom of Blessitt's son, who was staying with relatives, so that defendant did not know they were there. Defendant arrived at Blessitt's house, and after a five-minute conversation, defendant and Blessitt went into the master bedroom together. A few minutes later, Sims heard a "boom" sound, like a "gunshot." Sims then heard defendant start screaming, "Derica, Derica, what you do, what you do [sic]?" Defendant screamed for about "[f]ive or ten minutes," and then Sims heard the front door open and close.

McClendon opened the bedroom door and looked across the hall into Blessitt's room, where she saw Blessitt on the floor with blood on her. McClendon called 911 and reported that

-1-

Blessitt had been sexually assaulted. Shortly after, Warren Police Department officers arrived at Blessitt's house and conducted a search. Defendant then walked in through the front door of the house, approached Sims, and began repeating, "I didn't do it. I didn't do it. I didn't do it." The police officers arrested defendant.

The officers conducted a search of the house, and Officer Nicholas Tate testified that when he entered Blessitt's bedroom, he saw Blessitt was clearly deceased "on the floor, with an apparent gunshot wound in her facial region." Blessitt's body was positioned on the floor of the bedroom "almost as if she were doing the splits." There was a "significant amount" of blood on and around Blessitt, as well as a bloody right handprint on her back. On the floor in front of Blessitt was a "black semi-automatic handgun." Defendant had blood on his hands, wristwatch, underwear, left leg, and foot. Later, it was confirmed that the firearm was registered to defendant and that the bullet that killed Blessitt came from defendant's firearm. Additionally, testing from the Michigan State Police forensic laboratory concluded that the blood found on defendant and the firearm came from Blessitt.

Dr. Daniel Spitz, the Macomb County Medical Examiner, performed an autopsy on Blessitt and determined that Blessitt's cause of death was "a gunshot wound to the head." He classified Blessitt's death as a homicide. The gunshot wound was located "on the right side of [Blessitt's] head above the ear" and there was no exit wound. The bullet traveled "a front to back path through the brain." Further, based on imprint abrasions and soot found on Blessitt's head, Dr. Spitz determined that "when the gun was fired, the muzzle of the gun was in direct contact with the skin." Dr. Spitz also testified that there was nothing to suggest to him that Blessitt was suicidal. Sims testified that, on the night of the incident, Blessitt was "happy" and "having fun." She stated that Blessitt was not depressed or upset about anything before she spoke with defendant.

In support of defendant, Johnnie Burgen testified that he had known defendant since childhood and that defendant is not an aggressive person. Defendant aspired to work in the medical field and defendant had started going to nursing school. Burgen testified that defendant wanted to save lives and he was very involved with his family. Additionally, defendant's aunt, Rosa McLean, testified that defendant is a hardworking person who is active in the community and is family-oriented. Defendant did not testify at trial.

Defendant was charged with second-degree murder, MCL 750.317, and felony-firearm, MCL 750.227b. At the bench trial the prosecution argued that there was sufficient evidence to establish beyond a reasonable doubt that defendant killed Blessitt and was guilty of second-degree murder. In turn, defendant argued that there was reasonable doubt whether defendant killed Blessitt. Additionally, defendant argued that the trial court should consider the lesser offenses of statutory involuntary manslaughter, MCL 750.321 and MCL 750.329, and reckless discharge of a firearm, MCL 752.861.

The trial court found defendant guilty of statutory involuntary manslaughter and felony-firearm, and issued a written opinion. The trial court concluded that the prosecution established, beyond a reasonable doubt, that "Blessitt's death resulted from the discharge of [defendant's] firearm, which [defendant] was intentionally pointing at Blessitt when the trigger was pulled." The court concluded that there was no evidence that Blessitt was suicidal nor that she pointed the firearm at herself for any reason, and that it was not a logical conclusion, based on the path of the

wound track, that Blessitt was the one who fired the weapon. The court also concluded that there was no reasonable doubt concerning defendant's intent because "holding a gun to the point of contact with someone's head establishes beyond a reasonable doubt that it was intentionally pointed at the victim." Consequently, the court concluded that defendant was also guilty of felony-firearm because he was in possession of the firearm during the commission of this felony.

Defendant's sentencing guidelines range for the involuntary manslaughter conviction was 29 to 57 months' imprisonment. At the sentencing hearing, defendant argued that the trial court should make a downward departure from the minimum sentence range because he did not have a prior record, he was studying in nursing school, and he is an honorable person who wants to save lives. Defendant thus urged the court to instead consider rehabilitation and impose a probationary sentence. At the close of the sentencing hearing, the trial court sentenced defendant to 730 days' imprisonment on the felony-firearm conviction consecutive to 29 to 180 months' imprisonment on the involuntary-manslaughter conviction. The trial court then awarded defendant 730 days' jail credit on the felony-firearm conviction and one day of jail credit toward the involuntary-manslaughter conviction.

## II. DISCUSSION

## A. SUFFICIENCY OF THE EVIDENCE

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). We examine the evidence in a light most favorable to the prosecution, resolving evidentiary conflicts in its favor, and determine whether a rational trier of fact could find the essential elements of the crime were proven beyond reasonable doubt. *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018). "With regard to an actor's intent, because of the difficulties inherent in proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018) (quotation marks and citation omitted).

Defendant argues that there was insufficient evidence to establish beyond a reasonable doubt that he committed the crime of involuntary manslaughter. We disagree.

Defendant was found guilty of statutory involuntary manslaughter under MCL 750.329. That statute provides, in relevant part:

> (1) A person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death.

Thus, under MCL 750.329, the elements of statutory involuntary manslaughter are

> (1) a death, (2) the death was caused by an act of the defendant, (3) the death resulted from the discharge of a firearm, (4) at the time of the discharge, the defendant was intentionally pointing the firearm at the victim, and (5) the defendant

did not have lawful justification or excuse for causing the death. [*People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007).]

In this case, Blessitt died from a gunshot wound to the head. There was no evidence presented that suggested there was a lawful justification or excuse for defendant shooting Blessitt. Defendant contends that the following evidence raises a reasonable doubt as to whether he intentionally pointed the firearm at Blessitt: Defendant shouted, "Derica, what you do, what you do [sic]?" after the weapon was fired; defendant told Sims, "I didn't do it;" Dr. Spitz testified that he could not definitively determine whether Blessitt's death was homicide or suicide based on the head wound alone; both defendant and Blessitt were right-handed, meaning that if defendant had pulled the trigger the bullet wound would have appeared on the left side of Blessitt's head, not the right; and Dr. Spitz could not determine whether the firearm trigger was pulled accidentally or with intent.

However, considering the circumstantial evidence and reasonable inferences made therefrom, see *Head*, 323 Mich App at 532, and examining the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence to establish, beyond a reasonable doubt, that defendant intentionally pointed the firearm at Blessitt when the weapon fired. The prosecution established that defendant and Blessitt were alone together when the firearm was discharged. The firearm was registered to defendant. Blessitt's gunshot wound was above her ear on the right side of her head. Dr. Spitz testified that the bullet traveled "a front to back path" through Blessitt's brain, and that, based on imprint abrasions and soot found on Blessitt's head, "when the gun was fired, the muzzle of the gun was in direct contact with [her] skin." Although Dr. Spitz testified that it was possible for Blessitt to have been holding the firearm, he did not think it was likely because of the position of the entry point on Blessitt's head and the front to back path the bullet traveled. The fact that Dr. Spitz could not determine whether the trigger was pulled intentionally or accidentally is not relevant; involuntary manslaughter does not require that defendant intentionally pulled the trigger, only that defendant intentionally pointed the firearm at the victim. See *Smith*, 478 Mich at 70. Further, because minimal circumstantial evidence is sufficient to prove a defendant's state of mind, see *McKewen*, 326 Mich App at 347 n 1, we conclude that defendant's act of holding the gun flush against Blessitt's head establishes that he intentionally pointed it at Blessitt. Additionally, there was no evidence presented to suggest that Blessitt was suicidal. Thus, the elements of involuntary manslaughter were established beyond a reasonable doubt.

Next, defendant argues that there was insufficient evidence to establish beyond a reasonable doubt that defendant committed felony-firearm. We disagree. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016) (quotation marks and citation omitted). Here, there was sufficient evidence to establish that defendant committed the felony of involuntary manslaughter. For the reasons discussed above, we conclude that it was defendant who possessed the firearm during the felony. Therefore, the trial court did not err by convicting defendant on the charge of felony-firearm.

Defendant also argues that his convictions constitute a violation of the Fifth Amendment because the standard of proof in a criminal prosecution (proof beyond a reasonable doubt) is a constitutional guarantee provided by the Due Process Clause. The Fifth Amendment states that

no person shall be "deprived of life, liberty, or property, without due process of law." US Const, Am V. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). As discussed, we conclude in this case that the prosecution established all elements of involuntary manslaughter and felony-firearm beyond a reasonable doubt, and thus, defendant's Due Process rights were not violated.

## B. SENTENCING

Defendant contends that he is entitled to a reasonableness review of his 29-month minimum sentence for his involuntary-manslaughter conviction and that the sentence is cruel and unusual. We disagree.

A sentence within the sentencing guidelines range is presumed proportionate and therefore reasonable; we are required to review for reasonableness only sentences that depart from the recommended minimum sentencing guidelines range. *People v Anderson*, 322 Mich App 622, 636 n 34; 912 NW2d 607 (2018). Under MCL 769.34(10), absent a constitutional challenge, see *People v Posey*, 334 Mich App 338, 357; 964 NW2d 862 (2020), we are required to affirm a sentence that falls within the guidelines unless there was an error in the scoring of the guidelines or the trial court relied upon inaccurate information when sentencing the defendant. To overcome the presumption that the sentence is proportionate, "a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).

In this case, the recommended minimum sentence range for defendant's conviction of involuntary manslaughter was 29 to 57 months' imprisonment. The trial court sentenced defendant to 29 to 180 months' imprisonment. Defendant's minimum sentence of 29 months' imprisonment is within the recommended minimum guidelines range and, in fact, is at the bottom of the recommended guidelines range, and thus is presumptively proportionate. Defendant does not assert that the trial court made an error in scoring the guidelines nor that the trial court relied on inaccurate information in its sentencing determination. Defendant instead argues that his age and the fact he will spend at least 29 months in prison away from his family and children are circumstances that make the sentence imposed disproportionate; neither fact, however, is an unusual circumstance, nor a circumstance that renders his sentence disproportionate.

Defendant also argues that his sentence constitutes cruel and/or unusual punishment in violation of the Eighth Amendment to the United States Constitution and the Michigan Constitution of 1963, art 1, § 16. We disagree. A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual. *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018).

As discussed, defendant in this case has failed to overcome the presumption that his within-guidelines sentence was proportionate, and thus his sentence is not cruel or unusual.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Noah P. Hood