*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S


PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JERMAINE LAMONT BREWTON,

      Defendant-Appellant.

UNPUBLISHED
August 17, 2023

No.  361169
Monroe Circuit Court
LC No.  2021-246232-FC


Before:  O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions and sentences for six counts of assault with intent to commit murder, MCL 750.83, and one count each of felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 480 to 680 months' imprisonment for each of the six assault with intent to commit murder convictions, 76 to 480 months' imprisonment for the felon in possession of a firearm conviction, 76 to 480 months' imprisonment for the felon in possession of ammunition conviction, and 24 months' imprisonment for the felony-firearm conviction.  We affirm.

## I.  BACKGROUND

This case arises from a shooting that took place near the intersection of Stewart Road and Telegraph Road in Monroe, Michigan.  Defendant was arrested for his suspected involvement, and after a four-day jury trial, was convicted as one of the shooters.

Alishia Jones witnessed a physical altercation involving defendant outside of a grocery store on February 1, 2021.  Defendant and Kelvin Harris (defendant's codefendant) were involved in a fistfight with people Jones was closely associated with.  During the fight, Jones laughed at defendant and Harris because they were losing the fight.  Jones also recorded the fight and uploaded a video of it to social media.  After the fight, Jones was worried about retaliation from defendant and Harris and was "concerned about [her] kids' safety and [her] own."  She then called her friend Alexanderia Alamo-Cruz and asked her to help transport her children to a hotel to spend

the night. Alamo-Cruz later arrived at Jones's house near Telegraph Road and Stewart Road. As they left Jones's house, Jones drove with three of her children in her car, and Alamo-Cruz drove a second car with three other adults and two of Jones's other children. Jones left her house first, and Alamo-Cruz followed behind her. After Jones turned on to Telegraph Road, she realized Alamo-Cruz's car was no longer behind hers. Jones then pulled into a gas station to wait for Alamo-Cruz. While at the gas station, someone yelled that there had been a shooting down the street. Jones immediately got into her car and drove back the way she came. At the intersection of Stewart Road and Telegraph Road, Jones saw Alamo-Cruz's car stopped at a corner. Alamo-Cruz was "slumped over in her car" in the driver's seat. Alamo-Cruz was unconscious but still breathing. A bystander called 911, and the police arrived shortly after.

Andrew Gannon testified that, on the day of the shooting, he was at a gas station on the corner of Telegraph Road and Stewart Road. While filling his car, Gannon saw "somebody walking on the street . . . [and] start shooting into [Alamo-Cruz's] car." Gannon then "ducked down behind [his] car" and called 911. Gannon witnessed the shooter exit a "dark[-]colored vehicle." While he only saw one person exit the dark-colored vehicle before he ducked down behind his own car, Gannon believed he also heard "another shooter" involved in the shooting.

On February 2, 2021, a black Nissan was found in Elizabeth Woods trailer park in Newport, Michigan. Evidence found in the black Nissan was tested; the fingerprints from a magazine body matched those of Harris, and fingerprints on a cigarette pack matched those of defendant. Further, 13 firearm casings from the shooting were examined; six of the bullets had been fired from one gun and seven had been fired from another. Additionally, data mapping from defendant's cellphone records showed that defendant's cellphone was at the grocery store where the fight occurred at 6:15 p.m. on February 1, 2021. Then, defendant's cellphone was recorded at the scene of the shooting at 10:27 p.m. The shooting itself occurred at 10:26 p.m. Further, defendant's cellphone was in the area of the Elizabeth Woods trailer park at 10:36 p.m.

Alamo-Cruz testified that, on February 1, 2021, Jones told her about a fight that had occurred earlier in the day involving defendant and Harris and that she was scared for her children's safety. Alamo-Cruz agreed to help Jones transport her children to a nearby hotel for them to spend the night and drove to Jones's house to pick up the children. Once at Jones's house, Alamo-Cruz noticed an occupied, running, dark-colored vehicle with its lights on parked across the street. Alamo-Cruz saw at least two men inside the vehicle but could not identify the occupants at first. She testified the men were watching her as she, three other adults, and Jones's two minor children loaded into Alamo-Cruz's car.

As Alamo-Cruz drove her car away from Jones's house sometime after 10:00 p.m., she noticed the dark-colored vehicle was following her. Then, when Alamo-Cruz stopped at a red light on Telegraph Road, the dark-colored car following her stopped and two men jumped out of the car and started shooting at her vehicle. One of the men approached the driver's side window holding a gun; Alamo-Cruz identified this man as Harris. The second man stood behind her car; Alamo-Cruz could not see his face but saw that he held "a long gun." She recognized the second man's voice as defendant's. Alamo-Cruz stated she had known defendant for at least five months before the incident and had interacted with him multiple times. She recognized defendant's voice because he had a specific way of talking that she was familiar with. Alamo-Cruz was shot in the shoulder and head during the incident and had "blacked out" shortly after she recognized Harris

and defendant as the shooters. Alamo-Cruz was then taken to the hospital and treated for life-threatening injuries. Alamo-Cruz underwent surgery to remove the bullet from her head; however, some fragments of the bullet still remained in her head at the time of the trial.

After its deliberations, the jury convicted both defendant and Harris of assault with intent to commit murder, felon in possession of a firearm, felon in possession of ammunition, and felony-firearm. In April 2022, a sentencing hearing was held for both defendant and Harris. The minimum sentencing guidelines range for the assault with intent to commit murder convictions was 270 to 900 months' imprisonment. The trial court acknowledged that Harris "was the leader" and the "driving force" of the shooting. Defendant then urged the trial court to consider defendant's lesser role during the shooting when imposing defendant's sentences. At the close of the hearing, as relevant, the trial court sentenced both defendant and Harris to 480 to 680 months' imprisonment for each of the assault with intent to commit murder convictions, to be served concurrently.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues there was insufficient evidence to establish beyond a reasonable doubt that he committed the crimes of assault with intent to commit murder, felon in possession of a firearm, felon in possession of ammunition, and felony-firearm. Specifically, defendant argues there was insufficient evidence to establish the element of identification for each crime. We disagree.

We "review de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We "examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Id.* at 196. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018) (quotation marks and citation omitted). "With regard to an actor's intent, because of the difficulties inherent in proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018) (quotation marks and citation omitted).

First, "[t]he elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Ericksen*, 288 Mich App at 195-196 (quotation marks and citation omitted). In this case, multiple individuals shot at Alamo-Cruz's stopped car full of women and children. Defendant contends there was insufficient evidence to establish that he was involved in the shooting because there was no evidence that anyone directly saw him at the scene of the shooting. However, considering the circumstantial evidence and reasonable inferences made therefrom, and examining the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence to establish, beyond a reasonable doubt, that defendant shot at Alamo-Cruz and the other occupants of her vehicle with the intent to kill.

The prosecution established defendant lost a fistfight and that Jones uploaded to social media a video of the fight with Jones laughing at defendant. Testimony also established that two

men in a dark-colored vehicle were parked outside of Jones's house and watched Jones and Alamo-Cruz load Jones's children into Alamo-Cruz's car. The dark-colored vehicle followed Alamo-Cruz's car when they left Jones's house, and once Alamo-Cruz's car stopped at an intersection, two men got out of the dark-colored vehicle and began shooting at Alamo-Cruz's car. Both men were holding a gun, and Alamo-Cruz identified the second man as defendant based on his voice. Alamo-Cruz recognized defendant's voice because she had known him for at least five months and recognized defendant's specific way of talking. The bystander who called 911 also testified that, while he had ducked down behind his car after the shooting started, he believed there had been two shooters involved in the shooting.

Further, defendant's fingerprints were on a cigarette pack that was found in a black Nissan, which was abandoned in the Elizabeth Woods trailer park. Firearm casings from the shooting were also tested; the police determined that the bullets had been fired from two different guns. Additionally, mapping data from defendant's cellphone showed that, on the day of the shooting, defendant had been at the grocery store where the fight occurred at 6:15 p.m., at the scene of the shooting at 10:27 p.m., and at the Elizabeth Woods trailer park at 10:36 p.m. The shooting occurred at 10:26 p.m.

Circumstantial evidence and reasonable inferences may be used to establish the elements of a crime. *Head*, 323 Mich at 532. We conclude that all of this evidence, together with the reasonable inferences therefrom, is sufficient to establish that defendant was one of the men who shot at Alamo-Cruz's vehicle. Further, because minimal circumstantial evidence is sufficient to prove a defendant's state of mind, see *McKewen*, 326 Mich App at 347 n 1, defendant's act of firing a gun at a car full of people establishes that he intended to kill the occupants within the vehicle. This is further evidenced by the fact that Alamo-Cruz was hospitalized for her injuries and was in critical condition during her surgery to remove one of the bullets from her head. There is also circumstantial evidence to establish that defendant knew the car was full of people, including Jones's children, based on defendant getting out of the same dark-colored vehicle that had been parked across from Jones's house as Jones and Alamo-Cruz loaded everyone into Alamo-Cruz's car. Thus, we conclude that all of the elements of assault with intent to commit murder were established beyond a reasonable doubt.

Next, the elements of felon in possession of a firearm are "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424."[1] *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). Similarly, a defendant is guilty of felon in possession of ammunition if he "possesses, uses, transports, sells, carries, ships, or distributes ammunition" before his right to do so has been formally restored under MCL 28.424. MCL 750.224f(6); see also MCL 750.224f(4). As noted above, there was sufficient evidence to establish that defendant possessed a firearm and ammunition during the shooting. Alamo-Cruz testified that Harris approached her car holding a gun and that a second man also stood behind the car holding "a long gun." Alamo-Cruz identified the second man as defendant based on his voice. The police also concluded that, based on the examination of the firearm casings, which were found

---

[1] MCL 28.424(4) describes that the circuit court may restore an individual's right to possess a firearm under certain circumstances.

in the dark-colored vehicle along with the cigarette pack with defendant's fingerprint, the bullets fired during the shooting came from two different guns. Thus, we conclude there was sufficient circumstantial evidence to establish that defendant possessed a firearm and ammunition. Further, defendant had been previously convicted of a felony. There is no evidence that defendant's right to possess a firearm or ammunition has been formally restored by a court.

Next, defendant argues that there was insufficient evidence to establish beyond a reasonable doubt that defendant committed felony-firearm. We disagree. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Bass*, 317 Mich App at 268-269 (quotation marks and citation omitted). Here, as we concluded above, there was sufficient evidence to establish that defendant committed the felony of assault with intent to murder, which was the underlying offense for the felony-firearm charge. Further, for the reasons discussed above, we conclude there was sufficient evidence to establish that defendant possessed a firearm during the commission of these felonies.

Defendant also argues that his convictions constitute a violation of the Fifth Amendment because the standard of proof in a criminal prosecution (proof beyond a reasonable doubt) is a constitutional guarantee provided by the Due Process Clause. The Fifth Amendment states that no person shall be "deprived of life, liberty, or property, without due process of law." US Const, Am V. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). However, as discussed above, we conclude the prosecution established all elements of assault with intent to commit murder, felon in possession of a firearm, felon in possession of ammunition, and felony-firearm beyond a reasonable doubt, and thus, defendant's Due Process rights were not violated.

## III. SENTENCING

Defendant argues that he is entitled to a reasonableness review of his assault with intent to commit murder sentences, and that the sentences are cruel and unusual punishment. We disagree.

For sentences that do not depart from the recommended minimum sentencing guidelines range, "the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016); see also MCL 769.34(10). Absent an error in scoring or a reliance on inaccurate information, this Court's reasonableness review of sentences within the minimum sentencing guidelines range is restricted by MCL 769.34(10). See *id*.

Defendant argues that *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), requires this Court to review the sentences imposed by the trial court for reasonableness. Defendant is correct that *Lockridge* held that the sentencing guidelines are no longer mandatory and are advisory, only. See *Lockridge*, 498 Mich at 391. Trial court judges may now exercise discretion and impose sentences that depart from the guidelines. See *id*. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392.

However, defendant is incorrect that his sentences are entitled to a reasonableness review in this case. Importantly, the *Lockridge* reasonableness review applies to sentences that *depart*

from the minimum sentencing guidelines range. See *id*. Under MCL 769.34(10), "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."

In *Schrauben*, the defendant's recommended minimum sentencing guidelines range was 0 to 17 months' imprisonment. *Schrauben*, 314 Mich App at 195. The trial court sentenced the defendant to a minimum of 16 months' imprisonment, which the defendant appealed. *Id*. at 195-196. Citing, MCL 769.34(10), the *Schrauben* Court affirmed the sentence because, "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Id*. at 196. This Court stated that, "[n]otably, *Lockridge* did not alter or diminish MCL 769.34(10) . . . ." *Id*. at 196 n 1. The defendant did not argue that there was an error in scoring or that the court relied on inaccurate information; thus, because the defendant's minimum sentence was within the recommended minimum sentencing guidelines range, this Court affirmed the sentence as was required under MCL 769.34(10). *Id*. at 196.

Likewise, in *Steanhouse*, the Michigan Supreme Court made clear that the reasonableness and proportionality review standards apply to sentences that *depart* from the recommended guidelines range. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The *Steanhouse* Court noted:

> Because both defendants received departure sentences, we do not reach the question of whether MCL 769.34(10), which requires the Court of Appeals to affirm a sentence that is within the guidelines absent a scoring error or reliance on inaccurate information in determining the sentence, survives *Lockridge*. [*Id*. at 471 n 14.]

Thus, we conclude that, for sentences that do not depart from the recommended minimum sentencing guidelines range, MCL 769.34(10) still controls.

In this case, the recommended minimum sentencing guidelines range for defendant's convictions of assault with intent to commit murder was 270 to 900 months' imprisonment. On these convictions, the trial court sentenced defendant to minimum terms of 480 months' imprisonment. Defendant's minimum sentences of 480 months' imprisonment are within the recommended guidelines range; the trial court did not make a departure when imposing the minimum sentences. Defendant does not allege there was an error in scoring during his sentencing. Additionally, there is no evidence the trial court relied on inaccurate information during sentencing. Thus, because defendant does not allege a scoring error, and because the trial court did not rely on inaccurate information in scoring, defendant's sentences are not subject to review for reasonableness.

Further, the imposed sentences for defendant's assault with intent to commit murder convictions are presumptively proportionate. A "sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual punishment." *People v Posey*, 334 Mich App 338, 358; 964 NW2d 862 (2020). "A defendant can only overcome that presumption by presenting unusual circumstances that would render a presumptively

proportionate sentence disproportionate." *Id*. Defendant argues his age makes the sentences imposed disproportionate because "a now [33] year old man will spend at least [42] years of his life in prison." However, we conclude that defendant being 33 years old is not an unusual circumstance. Further defendant argues his sentences are disproportionate because his codefendant was sentenced to the exact same sentences as defendant, even though the trial court acknowledged his codefendant was the "leader" of the incident. However, "the trial court is not required to consider the sentence of a codefendant" during a defendant's sentencing. *People v Colon*, 250 Mich App 59, 64; 644 NW2d 790 (2002). "Sentences must be individualized and tailored to fit the circumstances of the defendant and the case." *Id*. (quotation marks and citation omitted). Thus, we conclude the sentencing of his codefendant does not affect defendant's sentences or make his sentences less proportionate or reasonable.

Defendant further argues that his sentences violate the Eighth Amendment of the United States Constitution, and Article 1, § 16, of Michigan's 1963 Constitution. We disagree.

"To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). Here, defendant did not raise this claim below, and thus, this claim is unpreserved. When an issue is not properly preserved for appellate review, we review the unpreserved issue for plain error affecting a defendant's substantial rights. See *People v Noble*, 238 Mich App 647, 658; 608 NW2d 123 (1999). "[T]he defendant bears the burden to show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the lower court proceedings." *People v Cameron*, 291 Mich App 599, 618; 806 NW2d 371 (2011).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII. Similarly, the Michigan Constitution provides, "Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." Const 1963, art 1, § 16. Further, "[t]he Michigan Constitution prohibits cruel *or* unusual punishment . . . whereas the United States Constitution prohibits cruel *and* unusual punishment." *Burkett*, 337 Mich App at 636 (quotation marks and citation omitted). Thus, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*. (quotation marks and citation omitted).

Defendant argues that the disproportionality of his sentences constitutes cruel and unusual punishment. However, "the Eighth Amendment contains no proportionality guarantee." *Harmelin v Michigan*, 501 US 957, 965; 111 S Ct 2680; 115 L Ed 2d 836 (1991). "[T]he drafters of the Declaration of Rights did not explicitly prohibit 'disproportionate' or 'excessive' punishments. Instead, they prohibited punishments that were 'cruell and unusuall [sic].' " *Id*. at 967. The Court went on to note that, while all disproportionate punishments may be cruel, they are not always unusual. See *id*.

"Under the Michigan Constitution, the prohibition against cruel or unusual punishment includes a prohibition on grossly disproportionate sentences." *Burkett*, 337 Mich App at 636 (quotation marks, alterations, and citation omitted). However, a sentence within the guidelines range is "presumptively proportionate, and a proportionate sentence is not cruel or unusual."

*People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018) (quotation marks and citation omitted). Once again, "[i]n order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Burkett*, 337 Mich App at 637 (quotation marks and citation omitted).

In this case, we conclude the minimum sentences of 480 months' imprisonment are not cruel or unusual. Defendant was found guilty of assault with intent to commit murder and the recommended minimum sentencing guidelines range was 270 to 900 months' imprisonment. The trial court did not depart from that recommendation and instead imposed minimum sentences of 480 months' imprisonment. Further, because defendant's minimum sentences were within the recommended guidelines range, the sentences are presumptively proportionate. See *McFarlane*, 325 Mich App at 538. As discussed above, there are not any unusual circumstances that are sufficient to overcome this presumption. Thus, defendant's minimum sentences are presumptively proportionate, and proportionate sentences are not cruel or unusual punishment.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey